**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| PETERSEN-DEAN, INC., Petitioner, -against- NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA., Respondent. | **ORDER GRANTING MOTION TO REGISTER JUDGMENT IN OTHER DISTRICTS & DENYING CROSS-MOTION TO STAY ENFORCEMENT** 19 Civ. 11299 (AKH) |

ALVIN K. HELLERSTEIN, U.S.D.J.:

On February 11, 2020, I issued an order denying Petersen-Dean, Inc.'s ("Petersen") petition to vacate an arbitration award against it and granting National Union Fire Insurance Company of Pittsburgh, PA.'s ("National Union") cross-petition for enforcement of the arbitral award. *See* Order (Feb. 11, 2020) ("February Order"), ECF No. 21. I held that "there can be no doubt that the arbitral prehearing security award … was proper," as it was "well within the panel's discretion to guard against a National Union Pyrrhic victory" by "ordering an award small enough to minimize the risk of Petersen's collapse" from its precarious financial perch, but also "large enough to avoid the distasteful result of National Union succeeding in an arbitration only to suffer a net loss due to costs." February Order at 7, 9-10. Judgment was entered soon thereafter. *See* Judgments, ECF Nos. 22 and 26.

Petersen has thus far failed to comply with the Judgment, despite the clear order of this Court. National Union now moves for an order authorizing registration of the Judgment against Petersen pursuant to 28 U.S.C. § 1963, on the grounds that Petersen refuses to comply with the arbitral award and enforcing judgment. *See* Mtn. to Register Judgment, ECF No. 29. In response, Petersen brings a motion of its own, to stay enforcement of the Judgment pending its

appeal. *See* Mtn. to Stay Enforcement, ECF No. 35. Petersen's argument, thrice[1] rejected by the arbitral panel and once so by this Court, is that its financial fragility renders it unable to pay any interim security. For the reasons that follow, including the fact that granting Petersen's request would fundamentally undermine the rationale behind the arbitral award, National Union's motion is granted and Petersen's cross-motion is denied.[2]

**Discussion**

A. Registration of Judgments

Section 1963 of Title 18 provides in relevant part:

> *A judgment in an action for the recovery of money or property entered in any court of appeals, district court, bankruptcy court, or in the Court of International Trade may be registered* by filing a certified copy of the judgment in any other district or, with respect to the Court of International Trade, in any judicial district, when the judgment has become final by appeal or expiration of the time for appeal or *when ordered by the court that entered the judgment for good cause shown*. …. A judgment so registered shall have the same effect as a judgment of the district court of the district where registered and may be enforced in like manner.

28 U.S.C. § 1963 (emphases added). Good cause can be shown by "evidence that [the respondent] lacks sufficient property in the judgment forum to satisfy the judgment and has substantial property in another district." *Treasure Chest Themed Value Mail, Inc. v. David Morris Int'l, Inc.*, No. 17 Civ. 1, 2019 WL 2006179, at *2 (S.D.N.Y. May 6, 2019); *see also, e.g., Lifetree Trading Pte. Ltd. v. Washakie Renewable Energy, LLC*, No. 14 Civ. 9075, 2018 WL 4278280, at *1 (S.D.N.Y. Feb. 1, 2018) (noting that "'[g]ood cause" requires a "'mere showing that the party against whom judgment has been entered has substantial property in the other foreign district and insufficient property in the rendering district to satisfy the judgment'")

[1] *See* Administrative Order No. 1 (Sept. 12, 2019), ECF No. 7-1; Administrative Order No. 3 (Dec. 12, 2019), ECF No. 18-2; Administrative Order No. 5 (Jan. 29, 2020), ECF No. 39-1.

[2] Familiarity with the facts and procedural history of this dispute, described in my February Order, is assumed.

(quoting *HSH Nordbank AG N.Y. Branch v. Swerdlow*, No. 8 Civ. 6131, 2018 WL 1957265, at *1 (S.D.N.Y. May 14, 2010)).

In determining whether good cause has been shown, "[a] court may rely on affidavits and other documentary evidence," and, as such, a "judgment creditor need not provide exact evidence of the debtor's assets." *Lifetree Trading*, 2018 WL 4278280, at *1 (quotation marks omitted); *see also, e.g.*, *Donel Corp. v. Kosher Overseers Ass'n of Am., Inc.*, No. 92 Civ. 8377, 2001 WL 1512589, at *2 (S.D.N.Y. Nov. 28, 2001) ("In the absence of contrary evidence, the affidavit in support of the judgment creditors' motion should be presumed true."); *Treasure Chest Themed Value Mail*, 2019 WL 2006179, at *3; *Jamil v. SPI Energy Co.*, No. 16 Civ. 1972, 2017 WL 4326065, at *2 (S.D.N.Y. Sept. 8, 2017).

National Union has shown good cause. Petersen is a California corporation with its principal place of business in California, *see* Pet., ECF No. 1, at ¶ 5, and National Union adduces a sworn statement from counsel indicating that an asset search and investigation has turned up no assets in New York, *see* Crowell Decl., ECF No. 31, at ¶¶ 2-6. Petersen does not dispute these assertions. *See* Petersen Mtn. to Register Opp. Mem., ECF No. 48, at 2. Instead, it argues: "The purpose of [28 U.S.C. § 1963] is to allow for the efficient registration of final money judgments," and here there has only been an award of interim security rather than "any award on the merits in the [underlying] arbitration." *Id*. at 3-4. Therefore, Petersen urges, a judgment on an interim security award, even if it is for money, is "not a money judgment," and "cannot be enforced and collected" under Section 1963.

Petersen does not provide any persuasive authority to support this argument.[3] National Union's Judgment is clearly a Judgment for money. It is based on an arbitration award

[3] Petersen relies heavily on *Stiller v. Hardman*, a Second Circuit case holding that 8 U.S.C. § 1963 did not apply to any portion of a judgment providing for injunctive relief because "[t]he mandate of an injunction issued by a federal

ordering Petersen to pay money, albeit on an interim basis.  The arbitral award granted "[National Union']s Motion for Security *in the amount of $2 million to be provided by [Petersen]*," Interim Arbitration Award, ECF No. 7-1, at 1.  Section 1963, according to its terms, applies to any judgment "in an *action* for the recovery of money" (emphasis added), which this action surely is.  It is therefore no surprise that courts in this district have, accordingly, not hesitated to apply Section 1963 to motions to register arbitral awards of the kind at issue here.  *See, e.g., Ill. Nat'l Ins. Co. et al. v. TSC Staffing Solutions, Inc.*, No. 12 Civ. 6146, ECF Nos. 22, 24 (S.D.N.Y. 2014) (granting a motion pursuant to Section 1963 with respect to a pre-hearing security award); *Pacific Reinsurance Management Corp. v. Fabe*, 929 F.2d 1215, 1217-18 (7th Cir. 1991) (rejecting the argument that Section 1963 would not apply if the money was paid, for example, into escrow rather than directly to the claimant).

   National Union's motion to register the Judgment, *see* Judgment, ECF Nos. 22 and 26, in California or any other appropriate district, is granted.

---

district court runs throughout the United States," and there is "therefore no need for registration of injunction orders as there is for registration of the money judgment."  324 F.2d 626, 628 (2d Cir. 1963).  This has no application here.  The judgment here is not an injunction; it is plainly a judgment for payment of $2 million as security.  *See e.g., Gulino v. Bd. of Educ. of City Sch. Dist. of City of New York*, No. 96 Civ. 8414, 2019 WL 2454094, at *1 (S.D.N.Y. June 12, 2019) ("In determining the correct subsection of Rule 62 to apply, courts consider whether the underlying judgment requires a party to do or perform an act, rather than simply pay a calculable amount…").

In its brief in support of staying enforcement in the context of Federal Rule of Civil Procedure 62(b), Plaintiff points to a case from the Eastern District, *Safeco Ins. Co. v. of America v. M.E.S. Inc.*, No. 09 Civ. 3312, 2010 WL 5427208 (E.D.N.Y. Dec. 17, 2010).  In *Safeco*, the court granted summary judgment to the plaintiff on a provision of a contract entitling plaintiff to collateral security, and was asked by the defendants to stay enforcement.  *See id*. at *1-2.  The court analyzed the stay request under the standards pertaining to judgments for injunctive relief, noting that while the payment of collateral was not itself injunctive relief, the court had ordered specific performance—compliance with a contractual provision by a certain date—without setting the amount of collateral (thereafter asking the parties to brief the issue and to determine how to allocate any agreed upon amount between the several defendants), which was "injunctive in character."  *Id*. at *2-6, 5 n.5.  Putting aside that *Safeco* supported this analytical decision with a Second Circuit case that concerned a land sale contract and not the payment of collateral, *see* 09 Civ. 3922, ECF No. 125, at 4 (citing *Petrello v. White*, 553 F.3d 110 (2d Cir. 2008)), the present case contains none of the injunctive trappings of *Safeco*.  The arbitral award does not require the performance of any act; it merely requires Petersen to pay a fixed amount as security.  *See Centauri Shipping Ltd. v. W. Bulk Carriers KS*, 528 F.Supp.2d 186, 188 (S.D.N.Y. 2007) (Rule 62(b) is "'likely aimed at money judgments, the value of which can be calculated and secured with relative ease'") (quoting *J. Perez & CIA, Inc. v. United States*, 747 F.2d 813, 816 (1st Cir. 1984) (Breyer, J.)).

B. Staying the Enforcement of Judgments

Federal Rule of Civil Procedure 62 provides in relevant part as follows:

> At any time after judgment is entered, a party *may* obtain a stay *by providing a bond or other security*. The stay takes effect when the court approves the bond or other security and remains in effect for the time specified in the bond or other security.

Fed. R. Civ. P. 62(b) (emphases added).[4] In *In re Nassau Cty. Strip Search Cases* ("*Nassau*"), the Second Circuit explained that "[t]he purpose of the rule is to ensure that the prevailing party will recover in full, if the decision should be affirmed, while protecting the other side against the risk that payment cannot be recouped if the decision should be reversed," and, as such, a district court "may, in its discretion, waive the bond requirement if the appellant provides an acceptable alternative means of securing the judgment." 783 F.3d 414, 417 (2d Cir. 2015) (quotation marks omitted). The *Nassau* Court identified the following "non-exclusive" factors a district court may consider when deciding whether the waive the *supersedeas* bond requirement:

> (1) the complexity of the collection process; (2) the amount of time required to obtain a judgment after it is affirmed on appeal; (3) the degree of confidence that the district court has in the availability of funds to pay the judgment; (4) whether the defendant's ability to pay the judgment is so plain that the cost of a bond would be a waste of money; and (5) whether the defendant is in such a precarious financial situation that the requirement to post bond would place other creditors of the defendant in an insecure position.

[4] Petersen expends a great deal of effort asking the Court to instead apply Federal Rule of Civil Procedure 62(d), *see* Petersen Stay Mem., ECF No. 41, at 8-15, but that provision applies only to orders granting injunctive relief, and as such is inapplicable for the reasons we have already reviewed, *supra*. However, I note that even if the interim award here were construed as injunctive in kind, I would still deny Petersen's motion. *See John Wiley*, 327 F.Supp.3d at 649 (factors to be considered in whether to stay an injunction "include likelihood of success on appeal, injury to the movant, injury to the non-moving party, and the public interest"). Petersen's odds of success on appeal, in light of, among other things, the extreme deference owed to arbitration decisions, are slim. And while Petersen contends that it would be harmed by having to post bond, the record is insufficient to persuade me that other interested parties would be meaningfully harmed by Petersen having to pay bond (and conversely, if Petersen does *not* have to post a bond, National Union will be forced to litigate in the shadow of the ominous probability that Petersen may be unable to pay any final judgment), and, ultimately, there is a powerful public interest in preventing Petersen from derailing the efficient resolution of the underlying arbitration.

*Id*. at 417-18.  Case law makes clear that the *Nassau* factors are a tool geared toward ensuring a meaningful outcome for the prevailing party, and not a device for easing the judgment burden on the losing party.  *See, e.g., Butler v. Ross*, No. 16 Civ. 1282, 2017 WL 6210843, at *3 (S.D.N.Y. Dec. 7, 2017) (the *Nassau* factors "contemplate waiving the requirement of a *supersedeas* bond because a court is satisfied that the debtor would be able to pay the judgment with ease," and, noting the debtor "plead[ed] a case of impecuniosity," reasoning that *Nassau* "does not envisage waiving the bond requirement because a debtor simply cannot pay"); *John Wiley & Sons, Inc. v. Book Dog Books, LLC*, 327 F.Supp.3d 606, 649 (S.D.N.Y. 2018) ("Defendants ground their stay request on their *inability* to pay the judgment.  They provide documentation showing that the award dwarfs their assets.  But the bond requirement will not be waived solely on the basis that it will pose a severe financial hardship on the appellant."); *Moore v. Navillus Tile, Inc.*, No. 14 Civ. 8326, 2017 WL 4325537, at *1 (S.D.N.Y. Sept. 28, 2017) ("The bond requirement is not designed to protect the judgment debtor's ability to continue in business.").

In essence conceding (as it must) that all but the fifth of the *Nassau* factors clearly favor National Union, Petersen asks the Court to waive the bond requirement on the sole basis that meeting a bond requirement would "imperil other creditors."  Petersen Stay Mem. at 16-17.  Petersen argues that it has an agreement with a major lender that would allow the lender to accelerate the repayment date if Petersen had to post $2 million for bond, which in turn would cause Petersen to become insolvent and force it to declare bankruptcy.  *Id*. at 16.  Petersen also mentions "other creditors" but there is nothing specific about them in the record.

Petersen's argument is without merit.  Its plea of becoming insolvent does not trump the other factors of *Nassau*.  *See John Wiley*, 327 F.Supp.3d at 650 ("And even if the fifth factor favors a stay without bond, it does not outweigh the other factors"); *Moore*, 2017 WL

4325537, at *2 ("[A]ssuming … Navillus has proven the fifth factor, that does not meant the other *Nassau County* factors are outweighed."); *see also id*. at *3 (the fifth *Nassau* factor is "a weak read on which to ... argu[e] that the bond requirement should be waived"). The financial records produced by Petersen, whether or not supporting a possibility of bankruptcy, are not on their own a defense against a judgment creditor's right to register its judgment under the circumstances of this case.[5]

More importantly, granting a stay here would lead to a clear injustice. The arbitral panel, acutely aware of Petersen's financial woes and properly interpreting the terms of the underlying contract, ordered Petersen to provide a $2 million bond—*substantially* less than National Union's claimed damages of $27 million. In moving to stay the enforcement of this Court's Judgment enforcing the arbitral award, Petersen is seeking to stay a judgment that was issued for the express purpose of securing for National Union the costs of arbitrating the case. If enforcement were stayed, it would effect the precise outcome the arbitral panel sought to avoid. Petersen's motion to stay enforcement of the Judgment is denied.[6]

**Conclusion**

For the foregoing reasons, National Union's motion to register the Judgment in other districts (ECF No. 29) is granted, and Petersen's cross-motion to stay enforcement of the

---

[5] It also appears that some if not all of the default risk here traces to Petersen's primary lender strictly restricting the amount Petersen is allowed to borrow, see id. at ¶ 9, rather than to the disputed bond itself. Indeed, the chain of causation posited by Petersen seems to involve not only the imposition of bond, but a subsequent (possible) acceleration of payment imposed by Petersen's major lender hat would be detrimental to Petersen. See Milionis Decl., ECF No. 38, at ¶ 11 ("[T]he Lender may, among other things, accelerate Petersen's payment obligations.") (emphasis added).

[6] Petersen asks the Court to "make clear that the Amended Judgment is not tantamount to a $2 million money judgment on the merits." Petersen Stay Mem. at 15 n.6. There is no need to make that declaration. National Union readily accepts that it is obliged to do no more than "enforce the judgment and Award as they are written and any money it collects will be placed in an escrow account controlled by the arbitration panel." National Union Stay Opp. Mem., ECF No. 49, at 7 n.4.

Judgment (ECF No. 35) is denied. The Clerk shall terminate the open motions (ECF Nos. 29 and 35) and mark the case closed.

SO ORDERED.

Dated: April 24, 2020
New York, New York

_______________/s/_______________
ALVIN K. HELLERSTEIN
United States District Judge